UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEROME RIDDICK, :<br>    Plaintiff, :<br>                      :<br>    v. :    Case No. 3:11cv1555 (SRU)<br>                      :<br>CHEVALIER, et al., :<br>    Defendants. : | |

RULING ON DEFENDANTS' MOTION TO DISMISS [Doc. #67]
AND PLAINTIFF'S MOTION TO AMEND [Doc. #69]

Plaintiff Jerome Riddick filed this action *pro se* under 42 U.S.C. § 1983 (2000). He names twenty-seven defendants in the amended complaint: Lieutenants Chevalier, Barnette, Pafumi, Hadlock, Morris and Daire, Correctional Officers Melbourne, Cotto, Henry Smith, Emmelman, Buldoc, Josefiak, Durkin, Strielkauskas, Parnishkul, Brysgel, Lindsey, Keeney, Clark and Schold, Nurses Shannon Lawrence, Wendy Sanders, Lyman and Taylor, Psychologist Dr. Mark Frayne and Physicians Drs. Lazrove and Lee. Riddick challenges the use of in-cell restraints as subjecting him to conditions of confinement that exacerbated his mental illness, and claims that the administration of psychotropic drugs violated state law. He also argues that the defendants were deliberately indifferent to his medical and mental health needs and used excessive force against him.

The defendants move to dismiss all claims against Drs. Lazrove and Lee and any claims for violation of Conn. Gen. Stat. § 17a-544 as lacking in merit. Riddick has filed a memorandum in opposition to the motion to dismiss as well as a motion for leave to amend his complaint. For

the reasons that follow, the defendants' motion is granted and Riddick's motion is denied.

I.    Motion to Dismiss

The defendants move to dismiss on two grounds. First, they argue that all claims for violation of rights under Conn. Gen. Stat. § 17a-544 lack merit because prisoners have been excluded from the protections afforded by that statute. Second, theyt argue that neither Dr. Lazrove nor Dr. Lee violated Riddick's constitutionally protected rights.

A.  Standard of Review

When considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003). The court considers not whether the plaintiff ultimately will prevail, but whether he has stated a claim upon which relief may be granted so that he should be entitled to offer evidence to support his claim. *See York v. Association of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002).

In reviewing the complaint in response to a motion to dismiss, the court applies "a 'plausibility standard,' which is guided by two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the requirement that the court accept as true the allegations in the complaint "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the

2

reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Even under this standard, however, the court liberally construes a *pro se* complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Boykin v. KeyCorp*, 521 F.3d 202, 213-14, 216 (2d Cir. 2008).

B.  Facts

Riddick includes four counts in his amended complaint, each dealing with a separate incident. The court recounts below only those facts relevant to the motion to dismiss. Riddick was confined at the Northern Correctional Institution at all times relevant to this action.

In the first count, Riddick alleges that, on October 29, 2010, defendant Chevalier ordered Riddick confined with in-cell restraints in a "sensory deprivation" cell as punishment for an alleged disciplinary infraction. Defendants Frayne, Chevalier, Barnette, Melbourne, Cotto and Smith are not physicians and did not get prior approval from a physician before applying in-cell restraints. Riddick informed the defendants that he would inflict self-harm with the restraints and lock and then did so. In the administrative remedy forms regarding this incident that are attached to the amended complaint, Riddick describes the incident as a "manic episode or psychotic episode" and notes that he has a history of self-harm and destructive behavior. While he was restrained, defendant Lazrove ordered that Riddick be forcibly injected with psychotropic drugs without first offering the drugs to Riddick orally.

In the third count, Riddick alleges that, on December 20, 2010, he covered his cell window and was banging his head on the cell door. Defendant Daire and several officers who are not named as defendants placed him in four-point restraints without seeking mental health assessment or assistance. Riddick contends that state law requires that a person with psychiatric

3

disabilities not be placed in mechanical restraints without a physician's order.

In the fourth count, Riddick alleges that, on January 4-5, 2011, he had covered his cell window and repeatedly banged his head on the cell door and walls. Defendant Daire ordered Riddick confined in four-point restraints. While restrained, Riddick continued to inflict self-harm by striking himself in the head with the lock on the left hand restraint. Defendant Lee ordered him forcibly injected with psychotropic drugs without first offering the drugs to Riddick orally.

    C.    Discussion

        1.    Claims for Violation of Conn. Gen. Stat. §17a-544

Riddick contends that defendants, who are not physicians, authorized his placement in four-point and in-cell restraints in violation of his rights under Conn. Gen. Stat. § 17a-544. The statute, concerning the rights of psychiatric patients, provides: "No patient may be placed involuntarily in seclusion or a mechanical restraint unless necessary because there is imminent physical danger to the patient or others and a physician so orders." Conn. Gen. Stat. § 17a-544(a).

The Connecticut Supreme Court has held, however, that the provisions of Conn. Gen. Stat. §§ 17a-540 - 17a-550, known as the patient's bill of rights, does not apply to state correctional institutions. *Wiseman v. Armstrong*, 269 Conn. 802, 805, 850 A.2d 114, 115 (2004). The Connecticut Supreme Court specifically distinguished the requirements of ensuring safety and security in a correctional facility from those in a psychiatric hospital and noted that "it simply is not always possible within a correctional institution to wait for a physician's order before restraining an inmate. Indeed, the very nature of a correctional institution often *requires*

4

individuals to be restrained in some manner and placed in seclusion under immediate and unexpected circumstances." *Id.* at 814-15, 850 A.2d at 121.

The incidents underlying this action occurred while Riddick was confined at Northern Correctional Institution. Thus, any protection afforded by the patient's bill of rights is not applicable to him. The defendants' motion to dismiss is granted with respect to all claims for violation of rights derived from Conn. Gen. Stat. § 17a-544.

2. Claims Against Drs. Lazrove and Lee

In the first and fourth counts, Riddick alleges that defendants Lazrove and Lee forcibly medicated him. Inmates have a Fourteenth Amendment due process right to be free from involuntary medication with antipsychotic drugs. *Washington v. Harper*, 494 U.S. 210, 221-22 (1990). That right, however, is not absolute. "[T]he Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227.

Courts applying *Harper* in the context of a single administration of antipsychotic medication in response to an emergency situation have relied on the opinion of the doctor administering the medication. The Fourth Circuit held that a doctor who authorized a single emergency dose of antipsychotic medication to an inmate in danger of injuring himself without first conducting a hearing was protected by qualified immunity. *See Hogan v. Carter*, 85 F.3d 1113, 1116 (4th Cir. 1996) (noting that *Harper* did not consider one-time emergency use of antipsychotic medication). Several district courts also have held that isolated emergency administration of antipsychotic medication without a hearing does not violate due process. *See*

5

*Jones v. Chandra*, No. 02-CV-1161-JPG, 2007 WL 1320742, at *11 (S.D. Ill. Jan. 26, 2007) (limited period of time drug was used, admitted self-harm behavior, doctor's familiarity with condition and medical judgment and prior use of less-restrictive measures supported holding that forcible medication did not violate inmate's due process rights); *Dancy v. Simms*, 116 F. Supp. 2d 652, 657 (D. Md. 2000) (forcible medication of inmate twenty-two times over two-year period by psychiatrist without a hearing did not constitute due process violation where each occasion was deemed emergency); *Trammell v. Surles*, No. 94 Civ. 7360 (AGS), 1998 WL 477952, at *2 (S.D.N.Y. Aug. 13, 1998) (holding that use of antipsychotic medication on four occasions during one month where inmate demonstrated by statements and behavior that he was dangerous to himself or others satisfied constitutional requirements regarding use of forced medication).

Riddick was forcibly medicated on two occasions, in October 2010 and January 2011, when he was inflicting self-harm by striking himself repeatedly in the head with the lock on his restraints and banging his head against his cell door. Riddick concedes that he suffers from mental illness and has a history of self-harm and self-destructive behavior. He does not argue that the medication should not have been administered, only that he should first have been offered the chance to take the medication orally. The physician's decisions on these two isolated occasions to administer a single dose of antipsychotic medication was an appropriate response to an emergency situation where Riddick was a danger to himself. Thus, Riddick fails to state a due process claim for the involuntary administration of antipsychotic medication. The defendants' motion to dismiss on this ground is granted.

II.   Motion to Amend

Riddick seeks to amend the first, third and fourth counts of his amended complaint by

adding claims that the defendants violated his rights under Department of Correction Administrative Directive 8.5(2)(D) and Title II of the Protection and Advocacy for Mentally Ill Individuals Act, 42 U.S.C. § 10841 by placing him in in-cell restraints. He also seeks to add claims that defendants Lazrove and Lee violated his rights under UCONN/Correctional Managed Health Care Policy No. 12.01 by forcibly medicating him. Riddick has not attached a proposed second amended complaint to his motion. Although the motion could be denied on that basis, the court considers the merits of the motion and concludes that the proposed amendments would be futile.

Amendment is governed by Rule 15(a), Fed. R. Civ. P. "[Leave to amend] should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust–Oleum Corp.,* 244 F.3d 104, 110 (2d Cir.2001). An amendment is futile if the proposed new claim would not survive a motion to dismiss. *See Bank of New York v. Sasson*, 786 F. Supp. 349, 352 (S.D.N.Y. 1992).

Riddick seeks to add claims for violation of 42 U.S.C. § 10841. This statute, entitled Restatement of Bill of Rights for Mental Health Patients, encourages the states to review and revise laws regarding protection of mental health patients in accordance with various recommendations. The recommendations are stated in precatory language. The statute neither creates any rights enforceable under 42 U.S.C. § 1983 nor gives rise to a private right of action. *See Mele v. Hill Health Center*, 609 F. Supp. 2d 248, 255 (D. Conn. 2009) (citing cases). Thus, amendment to add claims under section 10841 would be futile.

Riddick also seeks to include claims for violation of Administrative Directive 8.5(2)(D). State prison directives do not confer any constitutionally protected rights on inmates. *See Sandin*

7

*v. Conner*, 515 U.S. 472, 481-82 (1995) (prison directives, which are designed primarily to guide correctional staff, do not confer rights on inmates). In addition, failure to comply with state-created procedures does not create a protected liberty interest and Fourteenth Amendment due process protections are not implicated by the defendants' alleged failure to comply with administrative directives. *See Rhodes v. Hoy*, No. 9:05-CV-836, 2007 WL 1343649, at *2 (N.D.N.Y. May 5, 2007) (holding that due process is not implicated by failure to comply with institutional administrative procedures); *see also Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993) ("A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable."), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995).

In addition, Directive 8.5 merely lists Conn. Gen. Stat. § 17a-544 as one source of authority for the policies included in the directive, which merely sets forth the basic parameters of mental health services for inmates. The directive does not reference use of restraints or forcible medication. Those topics are covered in other directives. *See* Directive 8.8 (psychoactive medication); 6.5 (use of force), www.ct.gov/doc (last visited Dec. 12, 2012). The court concludes that Riddick cannot state a cognizable claim for violation of the prison directive and amendment to add such a claim would be futile.

Finally, Riddick seeks to add claims for violation of UCONN Correctional Managed Health Care policy 12.01. As explained above, state agency policies do not give rise to constitutional rights or create liberty interests protected under the Due Process Clause. In addition, the court has previously determined that the actions of the physicians in ordering

involuntary medication did not violate Riddick's rights.  Amendment to add this claim also would be futile.

The court notes that Riddick has filed two additional amended complaints after he filed the motion for leave to amend.  The plaintiff neither sought nor was granted leave to file these amended complaints.  Accordingly, these amended complaints are not properly before the court.  The operative complaint in this case is first amended complaint filed on March 23, 2012, Doc. #25.

III.   Conclusion

The defendant's Motion to Dismiss [**Doc. #67**] is **GRANTED**.  Riddick's Motion to Amend [**Doc. #69**] is **DENIED**.  The case will proceed against the remaining defendants on the claims in the first amended complaint, Doc. #25.

**SO ORDERED** at Bridgeport, Connecticut, this 6th day of September 2013.

     /s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge